United States District Court
Southern District of Texas

**ENTERED**

March 11, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00127 |
| | § | |
| LANETTE LINTHICUM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON PENDING MOTIONS

Plaintiff Jewell Thomas, an inmate appearing pro se, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. He has paid the $402.00 filing fee. Pending before the Court are:

- Dr. Erik Hustak's Motion for Summary Judgment (D.E. 63);

- Plaintiff's Motion to Strike Dr. Hustak's Declaration (D.E. 70);

- Motion for Summary Judgment, filed by Bryan Collier, Dr. Lanette Linthicum, and Bobby Lumpkin (D.E. 72);

- Plaintiff's Motion for Summary Judgment (D.E. 105);

- Defendants Collier, Linthicum, and Lumpkin's Motion to Strike Plaintiff's Motion for Summary Judgment (D.E. 113, p. 3); and

- Defendants Collier, Linthicum, and Lumpkin's Motion to Dismiss Plaintiff's claims for failure to comply with Court orders (D.E. 113, pp. 3-4).

The referral of these motions to Magistrate Judge Julie K. Hampton is **TERMINATED**.

For the reasons stated herein, **IT IS ORDERED** that:

- Plaintiff's Motion to Strike Dr. Hustak's Declaration (D.E. 70) is **DENIED**.

- Defendants Collier, Linthicum, and Lumpkin's Motion to Dismiss Plaintiff's claims for failure to comply with Court orders (D.E. 113, pp. 3-4) is **DENIED**.

- Defendants Collier, Linthicum, and Lumpkin's Motion to Strike Plaintiff's Motion for Summary Judgment (D.E. 113, p. 3) as untimely filed is **GRANTED** and Plaintiff's Motion for Summary Judgment (D.E. 105) is **STRUCK**. Plaintiff's motion (D.E. 105) is **CONSTRUED** instead as his timely response to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin.

- Dr. Hustak's Motion for Summary Judgment (D.E. 63) is **GRANTED in part** and **DENIED in part**.

- Defendants Collier, Linthicum, and Lumpkin's Motion for Summary Judgment (D.E. 72) is **GRANTED in part** and **DENIED in part**.

## I.   JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

### A.  Procedural Background

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

Plaintiff sues the following defendants in this action: (1) Dr. Lanette Linthicum ("Dr. Linthicum"), the Health Services Director ("HSD") for the TDCJ;[1] (2) Dr. Erik Hustak ("Dr. Hustak"),[2] a UTMB doctor; (3) former TDCJ Executive Director Bryan Collier; and (4) former TDCJ Director Bobby Lumpkin. (D.E. 1, pp. 1, 7). Plaintiff asserts that Defendants violated his Eighth Amendment rights as well as his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12189, and the Rehabilitation Act ("RA"). Plaintiff broadly claims that Defendants violated his: (1) Eighth Amendment rights by creating and enforcing policies that operate to deny him a higher level of pain management care for his Chronic Pain Syndrome; and (2) ADA and RA rights by denying him numerous accommodations for his chronic pain condition. (D.E. 1-2, pp. 2-8).

**B.  Screening and Dismissal of Several Defendants**

The Court retained only Plaintiff's Eighth Amendment claims that Dr. Linthicum, Dr. Hustak, Executive Director Collier, and Director Lumpkin ("Defendants") acted with deliberate indifference to his medical needs associated with chronic pain. (D.E. 18). These claims were retained against Defendants in their individual capacities. *Id.* at 4. The Court dismissed with prejudice Plaintiff's related ADA and RA claims against Defendants. *Id.*

---

[1] Plaintiff indicates that Dr. Linthicum is the HSD for the University of Texas Medical Branch ("UTMB"). (D.E. 1, p. 7). Dr. Linthicum clarifies in her affidavit that she is the HSD for the TDCJ. (D.E. 65-3, p. 2).

[2] Plaintiff named "Eric Hustak" as a defendant in this case. (D.E. 1, p. 1). This defendant's first name has subsequently been clarified in Dr. Hustak's summary judgment motion to be "Erik." (D.E. 63, p. 1). The Clerk is **DIRECTED** to update the docket to reflect Dr. Hustak's correct first name.

In the January 4, 2024 Order retaining the deliberate indifference claims, the Court defined Plaintiff's deliberate indifference claim as one "for denial of a level of treatment that is alleged to be necessary and proven effective, but is being intentionally withheld for reasons unrelated to [Plaintiff's] medical need and despite his significant and chronic pain." *Id.* at 2-3. The Court found Plaintiff's allegations sufficient to state a plausible claim for deliberate indifference to his serious medical needs. *Id.* at 3 (citing *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015); *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014), and *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011)). The Court further concluded that Plaintiff "has pled a claim for prospective injunctive relief that should proceed against the TDCJ Defendant(s) who are in the best position to correct or override the policy that he alleges is arbitrarily preventing him from obtaining the healthcare he requires." *Id.*

### C.  Pending Motions

Dr. Hustak has filed a Motion for Summary Judgment. (D.E. 63). Plaintiff responded to Dr. Hustak's summary judgment motion and moved to strike Dr. Hustak's supporting declaration. (D.E. 70). Defendants Collier, Linthicum, and Lumpkin have filed a separate Motion for Summary Judgment. (D.E. 72). After a discovery dispute was litigated and resolved, Plaintiff was granted until December 17, 2025, to file his response to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin. (D.E. 103, pp. 1-2). Plaintiff then filed his own summary judgment motion. (D.E. 105).

Defendants, in turn, have filed two responses to Plaintiff's summary judgment motion. (D.E. 112 and 113). Plaintiff has filed a sur-reply. (D.E. 114).

## III.   SUMMARY JUDGMENT EVIDENCE

Dr. Hustak submits his own declaration in support of his summary judgment motion. (D.E. 63-1, Exh. A). Defendants Collier, Linthicum, and Lumpkin offer the following summary judgment evidence:

Exh. A:   Correctional Managed Health Care ("CMHC") Policy Manual G-51.10, Chronic Care Program ("CMHC Policy G-51.10) (D.E. 65-2).

Exh. B:   Affidavit of Dr. Linthicum (D.E. 65-3).

Exh. C:   Plaintiff's Relevant Medical Records (65-4).

Plaintiff's verified Complaint (D.E. 1) and More Definite Statement (D.E. 10) serve as competent summary judgment evidence based on his representation "under penalty of perjury" that his statements made therein were "true and correct." *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017) (Ramos, J.). Because Plaintiff further declared under penalty of perjury that the statements made in his response to Dr. Hustak's summary judgment motion (D.E. 70, p. 11), Motion for Summary Judgment (D.E. 105-1, p. 23), and sur-reply (D.E. 114, p. 17) were "true and correct," these submissions also constitute competent summary judgment evidence. *See Hanson v. O'Daniel*, No. A-21-CV-629-RP, 2023 WL 5493607, at *2 n.5 (W.D. Tex. Aug. 23, 2023). In addition, Plaintiff has submitted the following summary judgment evidence:

Exh. 1:    Plaintiff's Sick Call Requests ("SCRs") (D.E. 106).

Exh. 2:    Plaintiff's Grievances (D.E. 107).

Exh. 3:    Plaintiff's Medical Clinical Notes (D.E. 108).

Exh. 4:    Plaintiff's Referrals to the UTMB Clinic (D.E. 109).

Exh. 5:    Plaintiff's MRI/x-ray reports (D.E. 110).

Exh. 6:    Plaintiff's Specialty Clinic Approval Screen (D.E. 111).

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated."

Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## V.   DISCUSSION

### A.  Motion to Strike Dr. Hustak's Declaration

Dr. Hustak has submitted a declaration in support of his summary judgment motion. (D.E. 63-1). Pursuant to Federal Rule of Civil Procedure 56(h), Plaintiff moves to strike Dr. Hustak's declaration by objecting to many of the statements made by Dr. Hustak therein. (D.E. 70).

Rule 56(h) references affidavits or declarations submitted in bad faith and allows courts to order the offending party to pay the moving party reasonable expenses incurred as a result of defending against an affidavit or declaration submitted in bad faith or solely for delay. *See* Fed. R. Civ. P. 56(f). An affidavit in support of a summary judgment motion may be found to be in bad faith if it contains testimony that directly conflicts with other statements in the record. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007). Rule 56(h) does not authorize the Court to strike Dr. Hustak's declaration. Plaintiff further has not established that Dr. Hustak's statements in his declaration directly conflict with other statements in the record or were otherwise submitted in bad faith or for reason for delay to warrant the imposition of reasonable expenses under Rule 56(h).

Moreover, in *Ntakirutimana v. Community Health Systems, Inc.*, No. 5:09-cv-114, 2017 WL 11633471 (S.D. Tex. May 14, 2017) (Torteya, M.J.), Magistrate Judge Ignacio Torteya, III considered a similar motion to strike a party's declaration. *Id.* at 1. Judge Torteya explained:

Page **8** of **50**

… Motions to strike are disfavored and infrequently granted. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982); *Pan American Life Ins. Co.*, 311 F.2d at 428 n. 13 (5th Cir. 1962) ("Motions to strike ... are not favored."); *U.S. v. Cushman & Wakefield, Inc.*, 275 F.Supp.2d 763, 767 (N.D. Tex. 2002); *Wasserman v. Rodacker*, No. CIV.A.06 1005 RWR, 2007 WL 274748, at *1–2 (D.D.C. Jan. 29, 2007) ("Though the power to strike exhibits from motions for summary judgment derives from Rule 56, the framework of Rule 12(f), which allows pleadings to be stricken, is instructive. Under Rule 12(f), motions to strike are generally strongly disfavored[.]") (citations omitted). Further, Rule 12(f) of the Federal Rules of Civil Procedure does not apply to Defendants' Motion because it only provides for the striking of "pleading[s]." *See* FED. R. CIV. P. 12(f); *see also Cummings v. Bradley*, No. 3:11CV00751 AVC, 2013 WL 1149985, at *1 (D. Conn. Mar. 19, 2013) (Rule 12(f) only allows a court to strike pleadings, not exhibits attached to pleadings or motions for summary judgment) (citations omitted).

*Id.*

Rather than strike Dr. Hustak's declaration, the Court will consider Plaintiff's objections to the declaration below when addressing the parties' summary judgment motions and will sustain any objections "which have merit, to the extent necessary and appropriate." *See id.* at 2. Accordingly, Plaintiff's Motion to Strike Dr. Hustak's Declaration (D.E. 70) is **DENIED**.[3]

### B. Motion to Strike Plaintiff's Motion for Summary Judgment

While not docketed as motions, Defendants Collier, Linthicum, and Lumpkin ask the Court to strike Plaintiff's Motion for Summary Judgment (D.E. 105) as untimely and to dismiss his claims for failure to comply with court orders under Federal Rule of Civil

---

[3] While not presenting a formal motion, Plaintiff also asks the Court to defer consideration of Dr. Hustak's summary judgment motion due to Plaintiff's pending motion to compel. (D.E. 70, pp. 10-11). Plaintiff's motion to compel and all discovery disputes have been resolved. *See* D.E. 102. Plaintiff presents nothing to show an inability to present facts in opposition to Dr. Hustak's summary judgment motion.

Procedure 41(b). (D.E. 113, pp. 3-4). Dr. Hustak separately contends that Plaintiff's motion should be construed as his response to the summary judgment motion filed by Hustak's co-defendants. (D.E. 112, p. 1). Plaintiff argues that Defendants have been aware since April 28, 2025, of his intent to file a summary judgment motion and that they have never complained until now about Plaintiff waiving his ability to file a dispositive motion. (D.E. 114, pp. 2, 6).

Magistrate Judge Hampton set the dispositive motions deadline as April 11, 2025. (D.E. 60). Defendants filed two summary judgment motions on that date. (D.E. 63, 65). At no point did Plaintiff seek to extend the time for filing dispositive motions. A review of Plaintiff's motion to strike Dr. Hustak's declaration, dated April 23, 2025, and received five days later by the Court, does not reveal any intent to file his own summary judgment motion or attempt to show cause to excuse the late filing of same. Rather, Plaintiff argued that Dr. Hustak's summary judgment motion should be denied as premature and that his "declaration has created a genuine issue of material fact precluding summary judgment." (D.E. 70, p. 11).

On May 14, 2025, Magistrate Judge Hampton stayed the deadline for Plaintiff to respond to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin until the discovery dispute was resolved. (D.E. 75, p. 1). The deadline for Plaintiff to file his response to this summary judgment motion, therefore, was extended to December 17, 2025. (*See* D.E. 81, p. 50; D.E. 96, p. 16; D.E. 103, pp. 1-2). At no point did Plaintiff ask the Court about setting another dispositive motions deadline through a

Page **10** of **50**

proper motion. Plaintiff's summary judgment motion, dated and executed on December 17, 2025, was received by the Court on December 22, 2025. (D.E. 105, 105-1).

The Court finds that Plaintiff's summary judgment motion is untimely filed and that he has failed to show good cause to excuse the filing several months after the dispositive motions deadline expired on April 11, 2025. The Court further concludes that Plaintiff's filing is more properly construed as his response to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin. Throughout his filing, Plaintiff repeatedly mentions that a reasonable jury would find in favor of him on various issues, that the facts plausibly allege elements of his Eighth Amendment claims, and that he has plausibly stated—but not established as a matter of law—a claim of deliberate indifference. (D.E. 105, pp. 5, 11-12, 16; D.E. 105-1, pp. 1, 8, 12-13, 15, 20-22). In his conclusion, Plaintiff writes that:

> The operative question in this case is not whether the Guidelines's Pain Clinic Policy is generally justifiable, but whether a jury could find the application of the policy in the Plaintiff's case could have amounted to deliberate indifference to Plaintiff's medical needs. Plaintiff believes that this is a question of fact that ought to be submitted to a jury.

(D.E. 105-1, p. 19).

Because Plaintiff offers nothing to excuse the late filing of his dispositive motion and his filing is construed as a response to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin, Plaintiff's Motion for Summary Judgment (D.E. 105) is **STRUCK**. The records reflects that Plaintiff's response was filed in a

Page **11** of **50**

timely manner as it was dated and executed on December 17, 2025. As such, any motion to dismiss Plaintiff's claims for failure to comply with Court orders under Rule 41(b) is **DENIED**.

### C. Summary Judgment Evidence on Plaintiff's Deliberate Indifference Claims

#### (1) Plaintiff's Statements and Pain Management Guidelines

Plaintiff states that he suffers from and has been diagnosed with Regional Complex Chronic Pain Syndrome. (D.E. 1-2, p. 2). Plaintiff states that he was diagnosed with this condition in 2019 by his free world doctor. (D.E. 10, p. 1). According to Plaintiff, "Chronic Pain Syndrome may be defined as a disorder whereby pain never dissipates and has to be treated with medications daily." *Id.* at 2. The source of Plaintiff's pain, he says, can be traced to his lateral pelvic tilt condition, "which had been repaired with success with limitations." *Id.*at 7. Plaintiff further explains that his lateral pelvic tile and chronic pain issues stem from serious injuries to his left lower leg. (D.E. 105-1, p. 12). According to Plaintiff, radiographs and a CT scan confirm deformities in his lower left leg involving the tibia, fibula, and soft tissue swelling and edema in the left calf and left foot. *Id.* at 12-13.

While neither Dr. Linthicum nor Dr. Hustak have personally treated Plaintiff for his Chronic Pain Syndrome, Plaintiff states that they have created and implemented a pain management policy that has harmed Plaintiff. (D.E. 10, p. 4). While not attaching the pain policy to his summary judgment motion, Plaintiff indicates that he attached the policy to his motion to compel filed on April 8, 2025. (D.E. 105, p. 25). The policy

Page **12** of **50**

referenced by Plaintiff is entitled "Correctional Managed Care Pain Clinic Outpatient Referral Guidelines" ("CMCPCOR Guidelines") (D.E. 61-1, p. 2). Plaintiff identifies Dr. Hustak as the author of this policy. (D.E. 10, p. 5). On page one of the CMCPCOR Guidelines, the author's name is listed as "Dr. Eric Hustak." *Id.*

Plaintiff summarizes the CMCPCOR Guidelines as follows:

- Treatment of mild to moderate pain includes the use of 325mg Acetaminophen (325 mg), Ibuprofen (200mg-800mg), Naproxen 250mg-500mg, or Meloxicam (7.5mg-15mg). If no resolution, continue for another 10-20 days. "If no resolution, re-evaluate etiology of pain."

- In order to gain access to the Pain Clinic, there must be "[a] diagnosis of: (1) Intractable Cancer Pain; (2) Implanted Spinal Cord Stimulator or Intrathecal Drug Delivery Device; or (3) New Onset low back or neck pain with radiculopathy."

- For all other Chronic Pain Syndromes, use (1) activity modifications as appropriate; (2) Ibuprofen (400mg); or (3) Methocarbamol. If no resolution, then re-evaluate severity and etiology of pain.

- If acute pain, use Acetaminophen (650 mg) or "EC ASA 650mg/Ibuprofen 400mg. If no resolution, continue NSAID X 30 days."

- If no resolution, enter the chronic back pain pathway by considering: "(1) non-mechanical source of pain; (2) imaging studies; [and] (3) definitive procedure."

- Counsel patient regarding the nature of disease such as: "(1) weight loss and exercise; (2) coping with chronic pain; and (3) self-exercise/stretch pain and medication Ibuprofen 600mg for 30 days. If no resolution consider referral to further identify etiology."

- Additional pain management medications according to policy consist of: "(1) Acetaminophen; (2) Ibuprofen; (3) Naproxen; (4) Duloxetine; (5) Venlafaxine HCL ER; (6) Divalproex Sodium; (7) Carbamazepine; [and] (8) Pyridoxine. If no resolution consider Analgesic + antidepressant or analgesic + anticonvulsant or antidepressant + anticonvulsant."

*Id.* at 5. The CMCPCOR Guidelines include this statement: "The pathways do not replace sound clinical judgment nor are they intended to strictly apply to all patients." (D.E. 61-1, pp. 7, 12).

Plaintiff explains that, since learning of his chronic pain syndrome in 2020, prison medical providers have prescribed Plaintiff several types of medications "per policy" to treat his chronic pain condition. (D.E. 10, p. 2). Plaintiff indicates that none of the medications prescribed to him (Cymbalta, Effexor, Naproxen, Tylenol, Gabapentin, Ibuprofen, and Tegretol) have proven to be successful. *Id.* at 3. He adds that the medications prescribed to him have adverse side effects, which were known to Defendants before Plaintiff entered into TDCJ custody. *Id.* at 8. Based on the policy set forth in the CMCPCOR Guidelines, Plaintiff describes the following prescribed medications as ineffective in addressing his chronic pain:

- Duloxetine – Plaintiff experienced numerous adverse side effects without relief for his chronic pain syndrome on this medication and requested that it be stopped. *Id.* at 9.

- Venlafaxine – Plaintiff experienced numerous adverse side effects on this medication and requested that it be stopped. *Id.* at 9.

- Naproxen – Plaintiff experienced numerous adverse side effects without relief for his chronic pain syndrome on this medication and requested that it be stopped. *Id.* at 9.

- Ibuprofen – Plaintiff experienced stomach and kidney pain without any relief for his chronic pain syndrome and requested that it be stopped. *Id.* at 10.

- Carbamazepine – Plaintiff experienced numerous adverse side effects such as blurred vision, headaches, and palpitations. Since Plaintiff has a history of seizures, this medication was stopped. *Id.*

- Acetaminophen – Plaintiff experienced no relief for his chronic pain syndrome on this medication. *Id.*

Plaintiff states that Dr. Linthicum, as TDCJ's Health Services Director, ratified and approved Dr. Hustak's pain management policy. *Id.* at 5-6. Both Executive Director Collier and Director Lumpkin, according to Plaintiff, then approved the pain treatment polices, and are responsible for promulgating, implementing, and enforcing these policies which have caused Plaintiff harm. *Id.* at 6.

Plaintiff believes that the pain management policy in place amounts to deliberate indifference to his serious medical needs "because they simply don't work in [his] case." *Id.* Plaintiff's pain treatment plan has consisted of all of the steps set forth in the pain management policy. *Id.* at 6. For instance, Plaintiff states he has taken all of the medications listed in these policies both in the free world and in TDCJ custody without success. *Id.* at 7. Plaintiff has seen an orthopedic specialist who recommended that Plaintiff be admitted into the Pain Clinic. *Id.* Indeed, according to Plaintiff, "[e]very single provider that [he] has seen has recommended him to attend the Pain Clinic." *Id.*

Page **15** of **50**

Plaintiff alleges that he received inadequate pain management under the policy in place, which in turn creates a barrier for entry into the Pain Clinic. *Id.* Plaintiff summarizes as follows the barriers he has encountered as a result of the blanket policy in place denying him such entry:

- On October 8, 2020, Plaintiff was seen by Dr. Mary Helen Morrow, a UTMB medical provider, during his assignment at TDCJ's Henderson Unit. Dr. Morrow prescribed Plaintiff medications pursuant to the pain policy at issue in this case. (D.E. 105-1, p. 5).

- Dr. Morrow referred Plaintiff to the Pain Clinic on November 19, 2020. This referral, however, was denied because Plaintiff did not meet the criteria. *Id.*

- Nurse Practitioner Robin Johnson, during Plaintiff's assignment at TDCJ's Beto Unit, referred Plaintiff to the Pain Clinic on June 24, 2021. This referral, however, was denied because Plaintiff did not meet the criteria. *Id.*

- Dr. Imran H. Rajawani, during Plaintiff's assignment at TDCJ's Hutchins Unit, referred Plaintiff to the Pain Clinic on July 16, 2021. This referral, however, was denied because Plaintiff did not meet the criteria. *Id.*

- Plaintiff was not seen at the Pain Clinic for another couple of years. Dr. Mark Foreman, during Plaintiff's confinement at the McConnell Unit, referred Plaintiff to the Pain Clinic on February 24, 2023. This referral, however, was denied pending a second opinion. *Id.*

- On December 16, 2024, Plaintiff "was seen for chronic pain associated with his inability to sleep." Plaintiff explained to Dr. Paul Sundberg "that the UTMB's Pain Clinic had already denied prior referrals to the clinic." Dr. Sundberg nevertheless referred Plaintiff to the Pain Clinic. Plaintiff's referral was approved, and he was finally seen via telemedicine on February 18, 2025, by a medical provider

named Ms. Vu, who advised that MRIs must be done before any further steps. To date, no MRIs have been performed on Plaintiff. *Id.* at 6.

According to Plaintiff, "[p]ain management specialist[s] have found that specialized treatments such as steroid injections, nerve blocks[,] and narcotics have been proven successful pain controls." (D.E. 105, p. 3). These treatments, Plaintiff says, are available through the UTMB's Pain Clinic to which he has been denied entry. *Id.*

### (2) Dr. Hustak's Declaration

Dr. Hustak states that, since 2013, he has been employed as a full-time physician by the UTMB and that, since 2018, he has been "the Director of the Pain Medicine Fellowship Program within the Department of Anesthesiology at UTMB." (D.E. 63-1, p. 1, ¶¶ 2, 4). Dr. Hustak explains that he is not employed by the TDCJ and does not provide primary care to TDCJ inmates. *Id.* at 1, ¶ 5. According to Dr. Hustak, he did not provide medical care to Plaintiff or have any role "in making specific determinations regarding what treatment could be provided to [Plaintiff] or under what circumstances this specific patient could have access to the UTMB Pain Clinic or to treatment by a pain management specialist." *Id.* at 2, ¶ 8. Dr. Hustak further denies having any involvement in any of the policies or guidelines for Plaintiff's treatment. *Id.*

Dr. Hustak states that the pain management needs of TDCJ inmates "are typically managed completely by their primary care team" and that the execution of a treatment plan for pain management "is ultimately made by the primary physician responsible for the patient's care." *Id.* at 2, ¶ 6. Dr. Hustak explains that the UTMB Pain Clinic, while

Page **17** of **50**

primarily serving patients not in TDCJ facilities, offers "telehealth (virtual) pain consultations, if desired by TCDJ primary care physicians, to provide opinions on treatment plans." Dr. Hustak states further:

- He has no position or role within TDCJ;

- He has no duty or authority to make or implement policies concerning the health care provided to TDCJ inmates;

- He is not involved in the decision-making as to the treatments available to TDCJ inmates for chronic pain;

- He has no authority with regard to which inmates "are referred to the telehealth Pain Clinic by the primary care providers responsible for treating patients at TDCJ facilities"; and

- He is not on the CMHC committee that exists to formulate policies for TDCJ inmate health care and has no direct role in advising the CMHC committee.

*Id.* at 2, ¶ 9.

Since the filing of this lawsuit, Dr. Hustak has become aware of his misspelled name appearing at the top of the CMCPCOR Guidelines. *Id.* at 3, ¶ 11. Dr. Hustak denies authoring the CMCPCOR Guidelines and has no knowledge as to why his name was included at the top of the document. *Id.* at 3, ¶ 12. He believes that, in 2019, one of his former fellow students "performed a utilization review and prepare[d] a report that identified specific complex pain conditions which would most benefit from consultation of the TDCJ service." *Id.* Dr. Hustak explains:

The rationale behind the referral guidelines was to expedite pain consultations regarding conditions necessitating the specialized training of our pain consultation service while

encouraging primary care implementation of pain medicine treatment plans for conditions that could be managed within the scope of a primary care practice. Of note, guidelines are nothing more than advisable pathways one can choose to follow as an aid, but are certainly not rigid pathways without exceptions; they do not replace sound clinical judgment and are not intended to apply strictly to all patients.

*Id.* at 3, ¶ 13.

Dr. Hustak cautioned that "[t]he recommendations contained in the report were never intended to result and, when correctly applied, should not result in the denial of medically necessary care to any patient. *Id.* at 3, ¶ 14. He referenced the fellow's advisory "that the guidelines it described should be applied using clinical judgment consistent with the standards of good medical practice." *Id.* According to Dr. Hustak, "the report was not intended to be binding on the independent medical judgment of any physician evaluating or treating a TDCJ inmate." *Id.* at 3, ¶ 15.

After reviewing Plaintiff's UTMB Pain Clinic records, Dr. Hustak concluded:

- Plaintiff was never denied a referral to the UTMB Pain Clinic;

- His treatment instead was deferred several time times to the treating primary care physician;

- Plaintiff has always and continues to be eligible for his chronic pain treatment by his McConnell Unit primary care team "in accordance with the formulary prescribed by the CMHC committee";

- Plaintiff was "re-referred to the telemedicine UTMB Pain Clinic" on February 18, 2025, in which a "fellow provided advice to the primary care providers on how to most effectively manage his pain"; and

- Dr. Hustak did not have any involvement and was not aware of this telemedicine visit.

*Id.* at 4, ¶ 16.

### (3)   CMHC Policy on Chronic Care

Defendants Collier, Linthicum, and Lumpkin have submitted CMHC Policy G-51.10 ("Policy G-51.10) entitled "Chronic Care Program." (D.E. 65-2). According to this policy, the treatment goal "is to restore and maintain a person's functioning to the extent possible" by "decreasing the frequency and severity of symptoms, preventing disease progression and fostering improvement in functioning." *Id.* at 1. Policy G-51.10 requires an Individual Treatment Plan ("ITP") for each inmate with a chronic disease "developed and documented in writing or electronically by a qualified health practitioner within 30 days of identification and/or diagnosis of the disease." *Id.* An IFP includes: (1) instruction to the patient about diet, exercise, and wellness; (2) prescribed medications and compliance records; (3) the type and frequency of testing and studies; (4) both subjective and objective findings; (5) review and updates of a patient's restriction list; and (6) frequency of ITP appointments for evaluation and treatment adjustment. *Id.*

### (4)   Dr. Linthicum's Affidavit

Dr. Linthicum states that she has served as TDCJ's Director of Health Services Division ("HSD") since 1998. (D.E. 65-3, p. 2). She states that the TDCJ's HSD "does not have the statutory authority to provide medical care" and that neither the HSD nor its director "provide[s] direct medical care to inmates." *Id.* at 2-3. According to Dr.

Linthicum, medical services under the CMHC plan "are provided through contracts with state medical school universities" identified as the UTMB and the Texas Tech University Health Sciences Center ("TTUHSC"). *Id.* at 3.

Thus, Dr. Linthicum explains that the "TDCJ HSD does not make ultimate health care calls, diagnoses, or treatment plans" since "clinical judgments rest with a designated license responsible physician." *Id.* Rather, Dr. Linthicum states that "UTMB and TTUHSC are the entities solely responsible for the provision of medically necessary health care services." *Id.* Last, Dr. Linthicum attests that she "never had a statutory duty or authority to either provide medical treatment, or to approve or deny specific treatment plans regarding [Plaintiff]; and [she has] never done so." *Id.* at 4.

### (5) *Sick Call Requests and Grievances*

At all relevant times while in TDCJ custody—including his time housed at the McConnell Unit—Plaintiff has submitted numerous SCRs describing his chronic pain, his inadequate pain management treatment, his requests to be referred to the Pain Clinic, or simply being in severe pain. (*See generally* D.E. 106, 106-1, 106-2, 106-3). Plaintiff further has submitted numerous grievances complaining during his time in TDCJ custody—including his time housed at the McConnell Unit—about the inadequate treatment of his chronic pain issues and his overall pain management treatment. (*See generally* D.E. 107, 107-1).

### *(6)　Relevant Medical Records*

On November 17, 2020, Dr. Morrow's clinical notes addressing Plaintiff's ITP indicated that Plaintiff was referred for pain management and that he declined trying Effexor, Cymbalta, Tegretol, or Depakote for pain. (D.E. 108-1, p. 9). Clinical notes dated June 24, 2021, reflect that Plaintiff was seen by NP Johnson, that he refused to try Effexor or Cymbalta for pain, and that he was referred by NP Johnson for pain management. *Id.* at 15. A medical document entitled "Health Service System Individual History" indicates that Plaintiff's referral for pain management was denied on June 25, 2021. (D.E. 111-1, p. 1).

Clinical notes dated July 16, 2021, reflect that Dr. Rajwani scheduled Plaintiff's referral urgently "for telemed with pain management." (D.E. 108-1, p. 19). Dr. Rajwani indicated that while Plaintiff was referred for pain management in June 2021, no appointment was scheduled. *Id.* In his "Health Service System Individual History" document, Plaintiff's referral for pain management was denied on July 22, 2021, for failing to meet the criteria. (D.E. 111-1, p. 1). On July 29, 2021, Physician Assistant Erin Freeman responded to Dr. Rajwani's referral as follows: "Does not meet criteria for expedited with the given info. Please provide additional details to support expedited category or patient will be scheduled on a routine basis in PAIN telemed clinic." (D.E. 109-2, p. 9). That same day, another response to Dr. Rajwani's referral stated that the referral was "deferred" with "denied" listed as the reason and that Plaintiff did not meet the criteria. *Id.* at 10.

After Plaintiff was transferred to the McConnell Unit, Dr. Isaac Kwarteng did not refer Plaintiff for pain management because he had been previously refused on three occasions. (D.E. 108-1, p. 33; D.E. 109-2, p. 2). Review of Plaintiff's free world medical records on December 23, 2021, reveals he has a lower left leg extremity injury which required multiple surgeries since 1996. (D.E. 108-1, p. 1). While complaining of chronic left leg pain, Plaintiff walks with a mild limp without the aid of an assistive device. *Id.* The chart review further discloses:

> Since his arrival at TDCJ he has requested to be referred to pain management several times at the previous units where he was before being transferred to McConnell. He has requested to be referred to pain management again while at McConnell to which he was shown that all of his previous referrals to pain management had been denied with one explicit reason being "did not meet criteria."

*Id.* A review of his free world records reveals that: (1) his treating doctor recommended medication management and home exercises; (2) he was referred to aquatic therapy on February 27, 2019, for gait training and left knee pain; (3) he received steroid knee injections on multiple occasions; and (4) he was given multiple medications. *Id.* Radiographs taken on January 5, 2022, confirm that Plaintiff suffers with chronic deformities of the left tibia and fibula along with "secondary left tibial talar and talonavicular joints osteoarthrosis." (D.E. 110-1, p. 1).

On February 24, 2023, Dr. Foreman examined Plaintiff's left leg and related pain issues in connection with his orthopedic appointment. (D.E. 108-2, p. 13). As part of his treatment plan, Dr. Foreman referred Plaintiff for pain management. *Id.* at 14. Medical

records show that Plaintiff was scheduled for an appointment on March 21, 2023, in UTMB TDCJ Clinic Anesthesiology in connection with Dr. Foreman's referral for chronic pain. (D.E. 109-1, pp. 3-4). This appointment was canceled for a medical necessity arising from a pending orthopedic evaluation of Plaintiff for surgical correction. (D.E. 65-4, p. 3; D.E. 109-1, p. 14).

Clinical notes show that Dr. Sundberg later referred Plaintiff for pain management on December 16, 2024. (D.E. 109-1, p. 1). On February 18, 2025, Plaintiff was seen at the Pain Clinic by Dr. Vu via a telehealth examination. (D.E. 108-2, pp. 19-26). Dr. Vu recommended an L-spine MRI and C-spine MRI to evaluate possible future interventions. *Id.* at 21-22. Dr. Vu also discussed with Plaintiff neuropathic medications vs NSAIDs, but Plaintiff declined indicating that he has taken several medications in the past with minimal relief. *Id.* at 22. They further discussed "genicular nerve blocks and possible RFTC[4] in the future." *Id.* Plaintiff communicated his desire to address his back and neck before addressing his knees. *Id.* Dr. Vu recommended returning to "RTC 1 month from today after patient has acquired L-spine MRI to review imaging." *Id.*

### D. Plaintiff's Eighth Amendment Deliberate Indifference Claims

#### (1) Individual Capacity for Monetary Relief

Defendants contend that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims retained against them in their respective individual

---

[4] RFTC refers to "Radiofrequency Thermocoagulation," which is a "minimally invasive and target-selective modality procedure … demonstrated to be successful for reducing pain in the treatment of various chronic pain syndromes." *See* National Center for Biotechnical Information, U.S. National Library of Medicine, http://pmc.ncbi.nlm.nih.gov/articles/PMC4018683/.

capacities. (D.E. 63, pp. 4, 9-10; D.E. 72, pp. 8-9). The defense of qualified immunity protects government officials from personal liability for monetary damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, a government official can be held personally liable for monetary damages only if the official's particular conduct: (1) "violated a statutory or constitutional right," and (2) "the right was clearly established at the time of the violation," such that "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 307 (5th Cir. 2024) (internal quotes and citations omitted).

Importantly, "a good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 287 (5th Cir. 2020) (cleaned up). Once the defense is invoked by a defendant, "the plaintiff must rebut it by establishing (1) that the [defendant] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted)). "At the summary-judgment stage, [a plaintiff] may

Page **25** of **50**

not rest on mere allegations or unsubstantiated assertions but must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

Because Defendants have asserted their right to qualified immunity, Plaintiff has the burden to "rebut the defense by establishing that [their] allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of [their] conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 409 (5th Cir. 2008). As discussed above, a government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ford*, 102 F.4th at 307 (internal quotes and citations omitted). A binding court case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Absent controlling authority, there must be a "robust 'consensus of cases of persuasive authority.'" *Ashcroft*, 563 U.S. at 741 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The controlling decision or consensus must

Page **26** of **50**

be with regard to the official's "*particular* conduct," described with specificity. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)). The second step of the qualified immunity inquiry is judged against the backdrop of the law at the time of the conduct. *Morgan v. Chapman*, 629 F. Supp. 3d 616, 630 (S.D. Tex. 2022) (Tipton, J.) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

Courts have discretion to decide the order in which to consider the two-prong inquiry when determining whether qualified immunity is warranted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) ("If the plaintiff fails at either step, the federal court can grant qualified immunity by addressing either step or both of them.").

### i. General Legal Principles

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim,

Page **27** of **50**

the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to establish a § 1983 claim for denial of adequate medical treatment, a prisoner must demonstrate that prison officials acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has "defined a 'serious medical need' as one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001). The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate must first prove "an objective exposure to a substantial risk of harm." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). "[I]nmates need not show that death or serious injury has already occurred to prove that unconstitutional conditions exist under the objective element[,] . . . [r]ather, they need only show that there is a

substantial risk of serious harm." *Garrett v. Lumpkin*, 96 F.4th 896, 900-01 (5th Cir. 2024) (internal quotations and citation omitted).

To prove the subjective prong of the deliberate indifference test, the inmate must establish that the prison official "had subjective knowledge that the inmate faced a substantial risk of harm [to the inmate's health and safety] and . . . [consciously] disregarded the risk." *Valentine*, 993 F.3d at 281; *see also Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). A prison official's knowledge of a substantial risk may be inferred if the risk was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of humankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

The test for deliberate indifference in the context of medical care has the same objective and subjective prongs detailed above. *See Farmer*, 511 U.S. at 839; *Valentine*, 993 F.3d at 281; *see also Estate of Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 305 (5th Cir. 2020) ("To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it." (cleaned up)). Deliberate indifference may be exhibited by prison doctors or nurses in their response to prisoners' medical needs. *Estelle v. Gamble*, 429 U.S 97, 104-05 (1976).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). In addition to establishing the objective and subjective prongs, an inmate "must prove that the delay or denial of medical treatment resulted in substantial harm, such as additional pain." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up); *see also Estelle*, 429 U.S. at 103 (explaining that the "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose").

Page **30** of **50**

### ii. Analysis

#### Deliberate Indifference under a Blanket Policy

Dr. Hustak contends in his summary judgment motion that he took no action that was deliberately indifferent to Plaintiff's constitutional rights. (D.E. 63, p. 6). Plaintiff responds by taking issue with Dr. Hustak's declaration in the following ways:

- Dr. Hustak presented nothing to support his assertion that referrals for pain management were only to obtain advice and opinions from a consulting service;

- Contrary to Dr. Hustak's assertions, not one medical provider indicated that the referrals excluded in-person visits with a pain management doctor;

- Five different medical providers, including an orthopedic surgeon, determined that Plaintiff's treatment plan should include the services of the UTMB Pain Clinic;

- With the exception of his last referral in 2025, all of his referrals were denied and not simply deferred; and

- Whether he was denied or deferred access to UTMB's Pain Clinic, the delay in receiving adequate treatment has caused him substantial harm through the suffering of additional pain.

(D.E. 70, pp. 2-3, 6-7).

Defendants Collier, Linthicum, and Lumpkin contend that Plaintiff's broad generalizations about TDCJ's Pain Clinic policies fail to establish the existence of any policy—such as Policy G-51.10—that is the moving force behind his alleged constitutional deprivation regarding his chronic pain. (D.E. 72, pp. 6-7). They maintain that disagreement with medical treatment does not amount to deliberate indifference, that

Plaintiff's opinion evidence regarding medical treatment is unreliable, and that they are entitled to qualified immunity. *Id.* at 6-9.

Plaintiff contends that Defendants knowingly disregarded a substantial risk of serious harm to Plaintiff by adhering to and blindly following policy which resulted in Plaintiff receiving ineffective treatments for his chronic pain condition. (D.E. 10, pp. 7-8; D.E. 105-1, p. 26). Reliance on a blanket policy rather than sound medical judgment, Plaintiff asserts, constitutes deliberate indifference. (D.E. 105-1, p. 3). Plaintiff further contends that Defendants' policy, which resulted in delays in treatment for pain management over a five-year period, further shows deliberate indifference to his serious medical needs resulting in substantial harm in the form of additional pain. *Id.* at 6-8. Plaintiff next contends that, under the blanket policy, he has only received cursory treatment in the form of medications for his pain management while more effective treatments have been ignored. *Id.* at 11-12. Last, Plaintiff cites to this Court's Order issued on January 4, 2024, where it held:

> [Plaintiff's] complaint should not be read as a typical disagreement between a patient and a physician over the method of treatment. It is a claim for denial of a level of treatment that is alleged to be necessary and proven effective, but is being intentionally withheld for reasons unrelated to [Plaintiff's] medical need and despite his significant and chronic pain.

(D.E. 114, p. 9 (citing D.E. 18, pp. 3-4)).

Plaintiff's statements reflect that he has suffered serious injuries to his lower left leg, resulting in both a lateral pelvic tilt and chronic pain issues. (D.E. 10, p. 7; D.E. 105-

1, p. 12). He further affirms that he was diagnosed in 2019 by a free world doctor with Regional Chronic Pain Syndrome which is defined as a condition where "pain never dissipates and has to be treated with medications daily." (D.E. 10, pp. 1-2). According to Plaintiff, however, none of the various pain medications prescribed to him while in TDCJ custody have proven to be successful and have caused many adverse side effects. (D.E. 10, pp. 2, 8-10). During his time in TDCJ custody starting in 2020 and continuing for several years, Plaintiff repeatedly submitted SCRs with the units' medical departments and grievances complaining about his chronic pain and seeking more effective pain management treatment, including being referred to the UTMB's Pain Clinic. (*See generally* D.E. 106, 106-1, 106-2, 106-3, 107, 107-1).

The objective medical evidence lends support to Plaintiff's assertions about his serious chronic pain issues, the ineffectiveness of the pain medications prescribed to him, and his pursuit of more effective treatments to manage his pain. (*See* D.E. 108-1, pp. 1 9, 19; D.E. 108-2, p. 13; D.E. 109-1, p. 1). The medical records further show that:

- From November 17, 2020 through December 16, 2024, various medical providers recommended that Plaintiff be referred to the UTMB's Pain Clinic for pain management on five separate occasions (D.E. 108-1, pp. 8, 15, 33; D.E. 108-2, p. 14; D.E. 109-1, p. 1; D.E. 111-1, p. 19);

- Three of Plaintiff's referrals, including referrals on June 24, 2021 and July 16, 2021, were denied (D.E. 108-1, p. 33; D.E. 109-2, p. 9; D.E. 111-1, p. 1);

- With regard to the referral dated June 24, 2021, the stated reason for Plaintiff's referral being denied was because he did not meet the criteria (D.E. 108-1, p. 33; D.E. 109-2, pp. 9-10);

- Per referral, dated February 24, 2023, by Dr. Foreman, Plaintiff was scheduled for an appointment on March 21, 2023, but was canceled due to another medical necessity for Plaintiff (D.E. 109-1, p. 14);

- Following Plaintiff's referral, on December 16, 2024, by Dr. Sundberg, Plaintiff was seen at the UTMB's Pain Clinic by Dr. Vu via a telehealth examination (D.E. 108-2, pp. 19-26); and

- In addition to discussing pain therapies like nerve blocks and RFTC, Dr. Vu recommended that Plaintiff obtain MRIs on his spine before proceeding further (D.E. 108-2, p. 22).

Plaintiff claims that the denial of his referrals to the UTMB Pain Clinic for further treatment and evaluations stemmed from a blanket policy contained in CMCPCOR Guidelines which limited Plaintiff to certain pain medication treatments while ignoring more effective therapies and treatments. Dr. Hustak states, however, that Plaintiff was never denied a referral to the UTMB's Pain Clinic but rather his treatment was "'deferred' several times to the treating primary care physician." (D.E. 63-1, ¶ 16, p. 4). He maintains that Plaintiff has always been and continues to be eligible for treatment for his chronic pain by his primary team at the McConnell Unit. *Id.* He further attests that, after being "re-referred," Plaintiff was seen and evaluated at the UTMB's Pain Clinic on February 18, 2025. *Id.*

Defendants have submitted Policy G-51.10 entitled "Chronic Care Policy" which indicates that the Chronic Care Program accepts patients with chronic disease once they have an appropriate ITP. (D.E. 65-2). However, this policy is silent as to the procedures that follow once a patient is referred for pain management. Policy G-51.10 provides no

guidelines articulating the specific criteria to be satisfied in order to gain entrance into UTMB's Pain Clinic for treatment and expedited evaluation once a medical provider makes a referral.

Conversely, the CMCPCOR Guidelines set forward pathways for how to treat certain chronic pain matters and categorically limits options for inmates like Plaintiff diagnosed with chronic pain. A fair reading of these guidelines indicates that: (1) treatments for most chronic pain issues involved the prescription of various pain medications; and (2) more expedited pain evaluations and other treatments—such as nerve blocks and steroid injections—were reserved for inmates with either intractable cancer pain, an implanted spinal cord stimulator or intrathecal drug delivery device, or new onset low back pain with radiculopathy. (D.E. 61-1, pp. 2-12).

Competent summary judgment evidence shows that Plaintiff's referrals to the UTMB's Pain Clinic were denied on three occasions starting in late 2020, that his referral by Dr. Rajwani on July 16, 2021, was noted as urgent, and that he was not evaluated by the clinic until February 18, 2025, well after he initiated this lawsuit. (D.E. 108-1, p. 33; D.E. 108-2, p. 22; D.E. 109-2, p. 9; D.E. 111-1, p. 1). The objective medical evidence lends support to the notion that the pain management policy in effect ignored the medical judgment of several medical providers—who referred Plaintiff to the Pain Clinic from 2020 through 2025 for further evaluation and treatment—and blocked him from accessing more effective treatment methods. Indeed, rather than explain in detail why these referrals were denied, the objective medical evidence merely notes that Plaintiff's

Page **35** of **50**

condition failed to meet some unspecified criteria. Plaintiff's eventual telehealth visit with a Pain Clinic doctor on February 18, 2025, constitutes evidence that additional tests in the form of MRIs and treatment options such as nerve blocks and RFTC could be available to Plaintiff to treat his complex pain issues more effectively.[5] (D.E. 109-1, p. 22).

Thus, the evidence presented in this case supports a reasonable inference that the denial of Plaintiff's access to the UTMB's Pain Clinic aligns more closely with the CMCPCOR Guidelines, the blanket policy referenced by Plaintiff. The Court therefore finds that fact issues exist as to whether:

- The denial of Plaintiff's referrals were due to the strict pathways and guidelines articulated in the CMCPCOR Guidelines or other similar policy in effect;

- The implementation of such a policy categorically precluded Plaintiff from receiving expedited consideration at the UTMB's Pain Clinic and receiving more effective treatment therapies; and

- The categorical denial of Plaintiff's initial referrals and ultimate long-term delay for Plaintiff to access the UTMB's Pain Clinic resulted in a substantial risk of serious harm especially when considering the considerable pain he endured for all those years.

In sum, the Court concludes that triable issues of fact exist as to whether the UTMB or TDCJ instituted a policy to categorically deny Plaintiff's entrance into the UTMB's Pain Clinic for expedited evaluation and more effective chronic pain treatments and whether that policy was implemented in deliberate indifference to inmates like

---

[5] Furthermore, as Plaintiff states, he has yet to undergo MRIs as recommended by Dr. Vu or be seen again via telemed or in person at the UTMB's Pain Clinic. (D.E. 105-1, p. 6).

Plaintiff who have serious medical needs regarding pain management. *See Rosati*, 791 F.3d at 1040 (approaching a medical need with a blanket policy that does not take into consideration the inmate's serious risk is actionable); *Colwell*, 763 F.3d 1060, 1063 (9th Cir. 2014) ("[T]he blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference."); *Smith v. Linthicum*, No. 4:19cv0787, 2021 WL 1742328, at *6 (S.D. Tex. Mar. 30, 2021) (Bennett, J.), *aff'd*, 2022 WL 7284285 (5th Cir. Oct. 12, 2022) (concluding that the TTUHSC's Southern Regional Director's "categorical denial of the multiple requests from Smith's medical providers for referral for repair of [a spinal cord stimulator ["SCS"] medical device] creates triable issues of fact as to whether TTUSCH or TDCJ instituted a policy not to treat SCS issues regardless of the circumstances and whether that policy was implemented in deliberate indifference to an inmate like Smith's serious medical needs).[6]

---

[6] The Court is mindful of the Fifth Circuit's decision in *Brauner v. Coody*, 793 F.3d 493 (5th Cir. 2015). In *Brauner*, the Fifth Circuit held that the plaintiff's pain management did not rise to the level of deliberate indifference, because medical staff's decision to prescribe alternate pain medication is a "classic example[ ] of a matter for medical judgment." *Id.* at 499. The *Brauner* case is factually distinguishable because Plaintiff here specifically claims that he was denied more effective—and not just alternative—treatments for pain under a blanket policy which fell outside of medical judgment and did not take into account his serious medical needs. Further, in *Silva v. Hidalgo County*, No. 7-21-cv-00001, 2022 WL 493598 (S.D. Tex. Jan. 25, 2022) (Alanis, M.J.), *adopted*, 2022 WL 489472 (S.D. Tex. Feb. 17, 2022) (Alvarez, J.), the court concluded that an inmate's claim about a blanket policy denying narcotic pain medication for inmates failed to rise to the level of deliberate indifference because "[m]edical staff evaluated and examined Plaintiff's medical need, and provided an adequate substitute for the prescribed narcotic medication." *Id.* at 9. This case is factually distinguishable from *Silva* in that Plaintiff here alleges that he was denied more effective treatments for chronic pain management under a blanket policy rather than merely being denied an adequate substitute.

### *Liability of Supervisory Officials in their Individual Capacity*

The Court turns next to consider whether any of the named Defendants in their supervisory capacity are liable for implementing the policy denying Plaintiff entry into the UTMB's Pain Clinic and receiving more effective treatments. Generally, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or respondeat superior liability of supervisors under § 1983. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)).

Dr. Hustak contends in his summary judgment motion that: "(1) [he] had no personal involvement in treating Plaintiff or in making any decisions or recommendations about his medical care, (2) [he] had no personal awareness of Plaintiff or any grievances he had concerning his medical care, (3) [he] has no policymaking authority with respect to health care rendered to inmates at TDCJ, and (4) [he] did not author or implement any policy addressing the provision of health care to inmates at TDCJ[.]" (D.E. 63, p. 6). Plaintiff disputes Dr. Hustak's assertion that he had no hand in creating the policy at issue, the CMCPCOR Guidelines. (D.E. 70, pp. 12, 14).

Dr. Hustak states that he had no role in formulating TDCJ policies in general and that he did not author the CMCPCOR Guidelines. (D.E. 63-1, pp. 2-3, ¶¶ 9, 11). However, his name, while misspelled, appears on the first page of these guidelines. (D.E. 61-1, p. 1). Dr. Hustak's testimony in his declaration indicates that one of his former fellows, working under his supervision and other physicians, played a significant role in crafting the guidelines at issue. (D.E. 63-1, p. 1, 3, ¶¶ 4, 12). It is undisputed that Dr. Hustak has served as the Director of the Pain Medicine Fellowship Program within the Department of Anesthesiology at UTMB, and that his duties include training pain medicine fellows and focusing on the management of acute and chronic pain conditions. *Id.* at 1, ¶¶ 3-4. In light of factual issues noted above concerning the impact of CMCPCOR Guidelines in denying or delaying Plaintiff access to more effective pain management, the Court finds that factual issues also exist as to whether Dr. Hustak played a crucial role in creating pain management guidelines for TDCJ inmates. Dr.

Page **39** of **50**

Hustak, therefore, is not entitled to summary judgment with respect to his argument that he lacked the requisite personal involvement in his supervisory capacity. *Cf. Porter*, 659 F.3d at 446 (holding that supervisory officials may be liable if they implemented or put into place an unconstitutional policy that resulted in constitutional injury); *Garrett v. Sulser*, No. 6:17cv310, 2018 WL 1192996, at *5 (E.D. Tex. Mar. 7, 2018) (rejecting supervisory liability due to inmate's failure "to articulate what specific policy Linthicum *created* or enforced that resulted in a constitutional deprivation) (emphasis supplied).

Defendants Collier, Linthicum, and Lumpkin assert that Dr. Linthicum, as TDCJ's Director of the HSD, has no authority to provide medical care, never personally treated Plaintiff, never reviewed his treatment plans, and did not supervise Plaintiff's treating physicians. (D.E. 72, pp. 7-8). They argue that Plaintiff: (1) fails to articulate the specific policy Dr. Linthicum created or enforced that resulted in a violation of Plaintiff's Eighth Amendment rights; and (2) asks "the Court to draw unsuitable inferences" based on her leadership role in TDCJ. (D.E. 113, pp. 5-6).

Plaintiff responds that Dr. Linthicum is personally liable in her supervisory capacity because:

- Dr. Linthicum, as part of her duties as Director of TDCJ's HSD, summarily denied Plaintiff's Step 2 grievances based on policies created by her to deny him adequate pain management;

- In her role as a member of the CMHC Committee ("CMHCC"), Dr. Linthicum implemented and approved statewide health policies, such as the CMCPCOR Guidelines; and

● Dr. Linthicum has the responsibility conferred by statute to resolve disputes between TDCJ and health care providers relating to disputes involving health care services.

(D.E. 105, pp. 8-10).

As to Plaintiff's first argument, Dr. Linthicum's role in receiving and denying Plaintiff's Step II grievances fails to demonstrate personal involvement in his Eighth Amendment violation. *Garrett*, 2018 WL 1192996, at *5. Generally, inmates have no constitutional right to the existence of a grievance procedure and otherwise having grievances resolved in their favor. *Id.* (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). Furthermore, "[t]he denial of a grievance does not demonstrate the existence of a policy or custom." *Id.*

Dr. Linthicum attests that she has "never had the statutory duty or authority to either provide medical treatment, or to approve or deny specific treatment plans regarding [Plaintiff]." (D.E. 65-3, p. 4). She further states that "UTMB and TTUHSC are the entities solely responsible for the provision of medically necessary health services." *Id.* at 3. On the other hand, Plaintiff states that: (1) the CMHCC, a statutorily created arm of the state, governs general medical policies; (2) Dr. Linthicum is a member of the CMHCC; (3) the CMHCC is tasked with developing and approving a managed health plan and general level of care for inmates; and (4) the CMHCC implements state-wide health policies. (D.E. 105, pp. 8-9).

The CMHCC is a committee created by the Texas Legislature for the limited purpose of developing a "managed health care plan" for inmates incarcerated in the state

Page **41** of **50**

prison system, which is operated by TDCJ. *See* Tex. Gov't Code § 501.146; *see also Robinson v. Stephens*, No. 7:12-CV-041-O-BL, 2015 WL 566723, at *6 (N.D. Tex. Feb. 10, 2015) (explaining that Texas law authorizes the CMHCC and empowers it to draft and develop policies for the delivery of correctional health care) (citing Tex. Gov't Code Ann. § 501.148). "[T]he statutory scheme that authorizes CMHCC to assist TDCJ with developing state-wide policies related to inmate health care does not include any language granting CMHCC the power to sue and be sued." *Sain v. Collier*, No. H-18-4412, 2019 WL 4144321, at *10 (S.D. Tex. Aug. 30, 2019) (Lake, J.) (citing Tex. Gov't Code §§ 501.131-501.156).

While the CMHCC lacks the requisite capacity to be sued, it appears that members of the CMHCC can "be sued individually in connection with the development and implementation of healthcare policy decisions on behalf of the TDCJ which directly impact TDCJ inmates." *Moreland v. McCoy*, 2:18-CV-269, 2020 WL 13801473, at *9 (S.D. Tex. May 11, 2020) (Libby, M.J.). The Court finds that summary judgment is not appropriate with respect to Dr. Linthicum in light of the factual issues regarding her role as a member of the CMHCC in implementing pain management policies for TDCJ inmates. *See Smith*, 2021 WL 1742328, at *6 (concluding that summary judgment "was not appropriate as to Deshields and Linthicum, who, as Directors of the health care divisions of their respective divisions, allegedly instituted and authorized" the relevant policy).

Defendants Collier, Linthicum, and Lumpkin also maintain that Executive Director Collier and Director Lumpkin are not liable because Plaintiff asks "the Court to draw unsuitable inferences" between their leadership role within TDCJ and his pain management treatment. (D.E. 113, p. 6). Plaintiff responds that:

- Executive Director Collier and Director Lumpkin each have the power and authority to change the policy set forth in the CMCPCOR Guidelines; and

- These defendants knew of and implemented the policy set forth in the CMCPCOR Guidelines because they are responsible for promulgating, implementing, and enforcing policies governing the treatment of inmates and their life.

(D.E. 10, p. 6; D.E. 105, pp. 10-11).

It is true that Texas law authorizes the TDCJ Director to adopt policies governing prisoner life. *See* Tex. Gov't Code § 494.002. However, "contracts and policies concerning inmates' health care is governed by the [CMHCC] as authorized by Texas law." *McWherter v. Davis*, No. 6:19-CV-00383-JDK-JDL, 2020 WL 5638714, at *6 (E.D. Tex. Aug. 5, 2020), *adopted*, 2020 WL 5632675 (E.D. Tex. Sep. 21, 2020) (citing Tex. Gov. Code Chapter 501, Subchapter E). Because decisions concerning inmate health care, including policies related to pain management treatment, are not within the authority of either the TDCJ's director or executive director, neither Executive Director Collier nor Director Lumpkin has the power to implement a pain management policy serving as the moving force behind Plaintiff's Eighth Amendment violations. *See* *Thompkins*, 828 F.2d at 304. Furthermore, Plaintiff's conclusory assertions to the

contrary are wholly insufficient to defeat a motion for summary judgment. *Marshall on Behalf of Marshall v. E. Carroll Par. Hosp. Serv.*, 134 F.3d 319, 324 (5th Cir. 1998); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (stating that unsubstantiated and subjective beliefs, opinions of fact, and conclusions of law are not competent summary judgment evidence).

Thus, Executive Director Collier and Director Lumpkin are not liable in their supervisory capacities with regard to Plaintiff's Eighth Amendment claims. These defendants are entitled to summary judgment and qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claims brought against them in their individual capacities.

### *Clearly Established Law*

As discussed above, the Court has determined that fact issues exist to preclude summary judgment on Plaintiff's Eighth Amendment claims as to whether:

- Dr. Hustak and Dr. Linthicum, in their supervisory capacities, created or implemented a policy (the CMCPCOR Guidelines) to categorically deny Plaintiff's entrance into the UTMB's Pain Clinic for expedited evaluation and more effective chronic pain treatments; and

- That policy was implemented in deliberate indifference to inmates like Plaintiff having serious medical needs regarding pain management.

The Court next turns to the second prong of the qualified immunity analysis—whether the actions of Dr. Hustak and Dr. Linthicum were objectively unreasonable under clearly established law.

Page **44** of **50**

General statements of legal principles not tethered "to analogous or near-analogous facts are not sufficient to establish a right clearly in a given context." *See Vincent*, 805 F.3d at 547 (internal quotations and citation omitted). The Fifth Circuit has recognized that the central concept in the qualified immunity context is "fair warning," in that "[q]ualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officers should be 'on notice that their conduct is unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (internal quotations and citations omitted).

Here, at the time Plaintiff was taken into TDCJ custody in 2020, it was clearly established that inmates possessed a right to adequate medical care. *Farmer*, 511 U.S. at 832. It was further clearly established that an inmate could demonstrate an Eighth Amendment violation by showing that:

- In the context of medical treatment, prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" (*Gobert*, 463 F.3d at 346 (internal quotations and citations omitted)); and

- The delay or denial of medical treatment resulted in substantial harm, such as additional pain." (*Petzold*, 946 F.3d at 249)

The Fifth Circuit recently cited its earlier 2018 decision in *Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018), as "reiterat[ing] and solidif[ying] what has long been the law in this circuit: that a prison medical official's decision to deprive an inmate of a [medically necessary procedure] . . . must be the product of a genuine and considered *medical* judgment, not a nonmedical reason like a refusal to pay (as in *Delaughter*) or a blanket and non-medically considered policy against the procedure[.]" *Smith*, 2022 WL 7284285 at *5. Last, it was clearly established in the Fifth Circuit that a supervisory official may be held liable for implementing a deficient policy that caused constitutional harm. *See Porter*, 659 F.3d at 446.

Controlling Supreme Court and Fifth Circuit precedent, therefore, provides fair and reasonable notice to Dr. Hustak and Dr. Linthicum (and reasonable prison officials in their positions) that their action—in implementing, creating, or authorizing a blanket policy blocking more effective pain management treatments and procedures—violated Plaintiff's Eighth Amendment constitutional rights. *See Smith*, 2021 WL 1742328, at *7. Dr. Hustak and Dr. Linthicum, therefore, are not entitled to qualified immunity and summary judgment as to Plaintiff's deliberate indifference claims brought against them in their individual capacities.

### (2) Injunctive Relief

Plaintiff states in his More Definite Statement that he sues Defendants only in their individual capacities with respect to his Eighth Amendment claims. (D.E. 10, pp. 11, 15, 17, 19). In retaining Eighth Amendment deliberate indifference claims against

Page **46** of **50**

Defendants in their individual capacities, the Court concluded that Plaintiff had pled a claim for prospective injunctive relief against TDCJ officials in the best position to correct or override the policy on pain management treatment." (D.E. 18, p, 3). Defendants contend, however, that Plaintiff cannot seek injunctive relief against them in connection with his Eighth Amendment claims because he sues them only in their individual capacities. (D.E. 63, p. 11; D.E. 72, pp. 4-5). Without addressing Defendants' argument, Plaintiff reaffirms that he sues them only in their individual capacities as to his constitutional claims. (D.E. 105, pp. 2, 12, 14).[7]

"Notwithstanding the Eleventh Amendment, a plaintiff may sue individual persons in their official capacities as agents of the state in federal court if the relief sought is declaratory or injunctive in nature and prospective in effect." *Jones v. Tex. Juv. Just. Dep't*, 646 F. App'x 374, 376 (5th Cir. 2016) (internal quotations and citations omitted). "This exception to Eleventh Amendment immunity is known as the *Ex parte Young* doctrine, and it is based on the legal fiction that a sovereign state cannot authorize an agent to act unconstitutionally." *Id.* (internal quotations and citations omitted). Thus, "[t]o meet the *Ex parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998).

---

[7] Plaintiff states in his response to the summary judgment motion that he sues Defendants in their individual capacities for money damages. (D.E. 105, p. 14). He states later, however, that he "continue[s] to request injunctive relief" but does not mention suing Defendants in their official capacities. (D.E. 105-1, p. 47).

Because Plaintiff only sues Defendants in their individual capacities, he cannot seek relief in the nature of prospective injunctive relief. *See Samuels v. Henry*, No. 1:23-CV-00132-H, 2025 WL 2697829, at *4 (N.D. Tex. Sep. 22, 2025) ("Section 1983 does not permit injunctive relief against state officials sued in their individual capacities[.]"); *Richards v. X Corp.*, No. 3:25-CV-0916-X, 2025 WL 2244330, at *2 n. 7 (N.D. Tex. Aug. 5, 2025) (recognizing that, in a § 1983 case, a plaintiff cannot seek injunctive relief against a defendant sued in his individual capacity); *White v. Texas*, No. 4:23-CV-925-P, 2023 WL 8518211, at *4 (N.D. Tex. Oct. 25, 2023), *adopted*, 2023 WL 8074126 (N.D. Tex. Nov. 21, 2023), *aff'd*, 2024 WL 1826245 (5th Cir. Apr. 26, 2024) (concluding that "section 1983 does not permit injunctive relief against state officials sued in their individual capacities); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) (noting that "the injunctive relief sought [expungement of portion of written reprimand] and won by [the plaintiff in his § 1983 case] can be obtained from the defendants only in their official capacity as commissioners"). Accordingly, Defendants' summary judgment motions (D.E. 63, 72) are **GRANTED** to the extent that Plaintiff's Eighth Amendment claims seeking injunctive relief against Defendants in their individual capacities are subject to dismissal.[8]

---

[8] In light of this ruling, it is unnecessary to consider Defendants alternative arguments that Plaintiff's claims seeking injunctive relief have been rendered moot, that any defendant in his or her official capacity lacks the authority to effectuate the relief sought, or that "*Ex parte Young* does not permit federal courts to order state officials to act in their official capacities by promulgating policies or performing their official discretionary duties in a particular way." (D.E. 63, pp. 10-12; D.E. 72, p. 5).

## VI.   CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

- The Clerk is **DIRECTED** to update the docket to reflect Dr. Hustak's correct first name as "Erik."

- Plaintiff's Motion to Strike Dr. Hustak's Declaration (D.E. 70) is **DENIED**.

- Defendants Collier, Linthicum, and Lumpkin's Motion to Dismiss Plaintiff's claims for failure to comply with Court orders (D.E. 113, pp. 3-4) is **DENIED**.

- Defendants Collier, Linthicum, and Lumpkin's Motion to Strike Plaintiff's Motion for Summary Judgment (D.E. 113, p. 3) as untimely filed is **GRANTED** and Plaintiff's Motion for Summary Judgment (D.E. 105) is **STRUCK**. Plaintiff's motion (D.E. 105) is **CONSTRUED** instead as his timely response to the summary judgment motion filed by Defendants Collier, Linthicum, and Lumpkin. The Clerk is **DIRECTED** to update the docket to reflect that Docket Entry 105 is Plaintiff's Response to the Motion for Summary Judgment filed by Defendants Collier, Linthicum, and Lumpkin.

**IT IS FURTHER ORDERED** that Dr. Hustak's Motion for Summary Judgment (D.E. 63) is **GRANTED in part** and **DENIED in part**. Dr. Hustak's motion is **GRANTED** to the extent that Plaintiff's Eighth Amendment claim seeking injunctive relief against Dr. Hustak in his individual capacity is **DISMISSED**. Dr. Hustak's motion is **DENIED** as to seeking summary judgment and qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claim against him in his individual capacity for monetary relief.

**IT IS FURTHER ORDERED** that Defendant Collier, Linthicum, and Lumpkin's Motion for Summary Judgment (D.E. 72) is **GRANTED in part** and **DENIED in part**.

Defendant Collier, Linthicum, and Lumpkin's motion is **GRANTED** as follows:

- Plaintiff's Eighth Amendment claim seeking injunctive relief against them in their individual capacities is **DISMISSED**.

- Executive Director Collier and Director Lumpkin are entitled to summary judgment and qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claims brought against them in their individual capacities. These claims, therefore, are **DISMISSED with prejudice**.

Defendant Collier, Linthicum, and Lumpkin's motion is **DENIED** as to seeking summary judgment and qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claim against Dr. Linthicum in her individual capacity for monetary relief.

In sum, Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Hustak and Dr. Linthicum in their individual capacities shall proceed to trial.

**ORDERED** on March 11, 2026.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE